UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

U.S. Foodservice, Inc.,
    *Plaintiff,*

v.

Arthur Tsebetzis, Steven Posin, John J. O'Hara, Jeffrey E. Gross, and Agar Supply, Inc.,
    *Defendants.*

Civil Action No. 03-12603-RCL

## Individually Named Defendants' Answer

Defendants answer as follows:

1. Defendants admit that Plaintiff is seeking injunctive relief. Defendants deny all other allegations in this paragraph.

2. Defendants admit that Former Employee Defendants conducted business in Massachusetts. Defendants deny all other allegations in this paragraph.

3. Defendants admit that Steven Posin is a resident of New Hampshire. Defendants deny all other allegations in this paragraph.

4. Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

5. Admitted.

6. Defendants state that Posin resigned from USF on July 13, 2002, and admit the remaining allegations in this paragraph.

7. Defendants state that O'Hara resigned from USF on May 23, 2003, and admit the remaining allegations in this paragraph.

8. Admitted.

9. Admitted.

10. Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11. Denied.

12. Denied.

13. Admitted.

14. Denied.

15. Denied.

16. Denied.

17. Admitted.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

26. Defendants state that any agreements between USF and its executives and its territory managers speak for themselves and deny the remaining allegations in this paragraph.

27. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

28. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

29. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

30. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

31. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

32. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

33. Defendants state that their agreements speak for themselves and deny the remaining allegations in this paragraph.

34. Defendants admit that they voluntarily resigned and deny the remaining allegations in this paragraph.

35. Defendants state that the letters speak for themselves and deny the remaining allegations in this paragraph.

36. Denied.

37. Denied.

38. First sentence: admitted. Defendants deny the remaining allegations in this paragraph.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Last sentence: Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this sentence. Defendants deny the remaining allegations in this paragraph.

47. Defendants admit that O'Hara had contact with Hanscom Air Force Base and Bella Luna and deny the remaining allegations in this paragraph.

48. Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this sentence.

49. Denied.

50. Defendants state that the letters speak for themselves and deny the remaining allegations in this paragraph.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Defendants lack the knowledge or information sufficient to form a belief about the truth of the allegations in this sentence.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

## Count I

65. Defendants repeat their answers in the above corresponding paragraphs.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

## Count II

73. Defendants repeat their answers in the above corresponding paragraphs.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

## Count III

81. Defendants repeat their answers in the above corresponding paragraphs.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

## Affirmative Defenses

### First Defense — Failure to State a Claim

Plaintiff has failed to state a claim upon which relief can be granted.

### Second Defense — Unclean Hands

Plaintiff's claims for equitable relief are barred by its unclean hands.

### Third Defense — Waiver

Plaintiff has, by its actions and/or inaction, waived some or all of its claims.

### Fourth Defense — Estoppel

Plaintiff's claims are barred by equitable estoppel.

### Fifth Defense — Doctrine of Laches

Plaintiff's claims are barred by the doctrine of laches.

### Sixth Defense — Failure to Mitigate Damages

Plaintiff has failed to mitigate its damages.

### Seventh Defense — Fraud in the Inducement

Plaintiff's claims are barred because it fraudulently induced the Defendants to sign the restrictive covenants.

### Eighth Defense — No Consideration

Plaintiff's claims are barred because the Defendants did not receive any consideration for signing the restrictive covenants.

### Ninth Defense — Duress

Plaintiff's claims are barred because it forced the Defendants to sign the restrictive covenants under duress.

### Tenth Defense — Material Beach by Employer

Plaintiff's claims are barred because it materially breached the employment agreement with the Defendants.

**Eleventh Defense — Moot**

Plaintiff's claims are barred because enforcement of the restrictive covenants are now moot.

**Wherefore,** Defendant respectfully requests that the Court:

a. Dismiss Plaintiff's Complaint with prejudice;

b. Enter judgment in favor of Defendants on each of Plaintiff's claims; and

c. Grant Defendants such other relief as it deems appropriate and just.

## Jury Demand

Defendants demand a trial by jury on all issues.

## Counterclaims

Defendant/Counterclaim-plaintiffs Arthur Tsebetzis and John O'Hara assert the following counterclaims against Plaintiff/Counterclaim-defendant USF:

## Introduction

This action arises out of Tsebetzis's and O'Hara's employment with USF. USF breached its contract with Tsebetzis to pay him a percentage of his 2002 bonus. And USF failed to pay O'Hara part of his wages.

In late 2002, Tsebetzis, among other USF employees, were promised that if their office sold a certain number of overstocked inventory products that they would receive a specific percentage of their bonus. Tsebetzis's office hit its quota but no one received the money they were promised. Tsebetzis is seeking to recover damages from USF for its breach

of its promise to pay him a percentage of his bonus if his office hit their inventory sales quota.

O'Hara is seeking to recover lost wages. As part of its compensation structure, USF designed a program called "Points of Focus" that allowed salespeople to earn "points" that were redeemed for valuable goods and services. The program rules required that employees forfeit these earned commissions if they left the company voluntarily. In May 2003, after USF's accounting fraud scandal became public, O'Hara resigned. He was told that he would not receive any of his vested points. O'Hara initially filed this claim with the Massachusetts Attorney General's Office and received a right to sue letter. He is seeking damages from USF for its failure to pay his wages under the Massachusetts Payment of Wages Statute.

## Parties and Venue

1. Arthur Tsebetzis resides at 66 Bridge Street, Medfield, MA.

2. John O'Hara resides at 18 Sunnybank Road, West Roxbury, MA.

3. Upon information and belief, U.S. Foodservice, Inc., is a Deleware corporation with a principal place of business at 9755 Patuxent Woods Drive Columbia, Maryland 21046. USF has an office at 201 Beacham Street, Everett, MA 02149.

4. Venue in this Court is proper under 28 U.S.C. § 1332.

## Factual Allegations

### Tsebetzis's breach of contract claim

5. Upon information and belief, USF is a broadline foodservice distributor with operations throughout the United States.

6. Tsebetzis worked for USF as a Senior Vice President of Sales and the Division President for Massachusetts.

7. In or around the end of 2002, USF upper management, including Dave Bailey (Zone President), Jim Sutton, Dave Ickes, and Tim Lee had a conference call with the Division Presidents and Vice Presidents of all of their regional offices.

8. Present for that conference call at the Boston-Everett office was Arthur Tsebetzis (Division President), Ted Cordin (Vice President), Tom Denio (Vice President Operations), Nancy DeCesare (Vice President Human Resources), and Paul Sullivan (Vice President Finance).

9. The purpose of the conference call was to deal with USF's overstocked inventory. USF had purchased a large inventory of certain vendor products to receive a sizable rebate from those vendors. But business slowed and the products were not moving quickly enough.

10. At that time because of slow sales it was unlikely that anyone was going to receive their bonus that year. Bonuses were 70% of base salary for Presidents and 50% of base salary for Vice Presidents.

11. At this conference call meeting, USF told each of the regional offices including Boston-Everett that if they sold a specific number of the products that were currently overstocked in inventory they would receive a percentage of their bonus. The percentage of their bonus that was eligible for collection was tied to a sliding scale depending on the exact number of inventory products the individual offices sold by the end of the year.

12. If the individual office hit their maximum quota for inventory products sold, they were eligible to receive 60% of their bonus.

13. The Boston-Everett office hit their maximum quota and were therefore entitled to collect 60% of their bonus. For Tsebetzis, a Division President, that was approximately $50,000 to $60,000.

14. USF acknowledged that this bonus was earned and sent eligible employees, including those in the Boston-Everett office, an announcement regarding the effect this bonus might have on their 401(k).[1]

15. These bonuses were supposed to be paid in the middle of February 2003, payments were deferred several times until they were eventually cancelled. USF blamed the recent publicity surrounding its accounting fraud scandal as the reason why the bonuses were not paid.

**O'Hara's failure-to-pay-wages claim**

16. As part of its compensation structure, USF has a program called "Points of Focus." Points are generated based on selling a particular vendors products. The points, once vested, are redeemable for valuable goods and services. The value of the goods and services are considered income and are taxed accordingly.

17. In May 2003, O'Hara resigned from USF.

18. At that time O'Hara had accumulated approximately $2000 worth of vested points of focus points.

19. O'Hara was told that he forfeited those points by voluntarily resigning.

20. On January 26, 2004, he submitted a Complaint to the Massachusetts Attorney General's Office and on January 27, 2004, he received a right-to-sue letter.

---

[1] *Announcement Regarding Bonus Payments* attached as Ex. A.

## Count I — Breach of Contract

21. Tsebetzis restates and incorporates by reference the allegations contained above.

22. Tsebetzis has fully performed his obligations to USF under the parties oral agreement to hit a certain sales goal in exchange for a cash bonus.

23. USF failed to perform its obligations to Tsebetzis under the parties' agreement.

24. USF's breach of the that agreement is a material breach of the agreement and has caused Tsebetzis to suffer substantial economic harm in the amount of approximately $50,000 to $60,000.

## Count II — Mass. Gen. Laws ch. 149, § 148

25. O'Hara restates and incorporates by reference the allegations contained above.

26. O'Hara earned commissions from USF that were definitely determined and had become due and payable.

27. USF failed to pay these commissions to O'Hara.

28. O'Hara has suffered damages a result of USF's failure to pay his wages in the amount of approximately $2,000.

**Wherefore,** Tsebetzis and O'Hara seek the following relief from this Court:

a.  USF must pay Tsebetzis damages in the amount of his bonus plus interest from the time the bonus was due;

b.  USF must pay O'Hara all of his earned commissions plus interest from the time his commissions were definitely determined and had become due and payable;

c. And award such additional relief as the Court deems just and proper.

Respectfully submitted,

Arthur Tsebetzis, Steven Posin, John J. O'Hara, and Jeffrey E. Gross,

By their attorneys,

*/s/ Jay Shepherd*

Jay Shepherd (BBO# 567844)
Lurleen A. Manning (BBO# 655109)
Shepherd Law Group, P.C.
99 Summer Street, Suite 910
Boston, MA 02110-1248
Telephone: 617.439.4200
Facsimile: 617.439.42007

Dated: January 30, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 1/30/04.